UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KAYLA MACKIE CARLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-1372-JES-JEH |
| | ) |
| GORENZ & ASSOCIATES, LTD., | ) |
| | ) |
| Defendant. | ) |

# ORDER AND OPINION

This matter is now before the Court on Defendant's Motion (Doc. 14) to Dismiss, Plaintiff's Response (Doc. 15), and Defendant's Reply (Doc. 17). For the reasons set forth below, Defendant's Motion (Doc. 14) is granted in part and denied in part.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. Doc. 1; *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). Plaintiff, Kayla Mackie Carlson, is a female who became pregnant in May of 2018 and gave birth to her first child on January 30, 2019. Defendant, Gorenz & Associates, is a professional tax and accounting firm in Peoria, Illinois. Jason Hohulin is a partner at Gorenz and Cory Cowan was a manager.

Plaintiff was hired at Gorenz on January 12, 2018. In April of that year she became a full-time intern. At that time, Plaintiff was told in a meeting with Jason Hohulin and Tom Peffer, another partner in Gorenz, that she would be brought on as a full-time accountant when she completed her degree in December of 2018. At this same meeting, Defendant agreed to, in the interim, employ Plaintiff as a full-time employee in an auditing/administrative assistant role. On

1

May 1, 2018, Plaintiff was granted full-time status and benefits. Plaintiff became aware that she was pregnant in mid-May of 2018 and informed Hohulin of her pregnancy in July of 2018. When Plaintiff told Hohulin of her pregnancy, he remarked, "Oh, you are going to miss tax season" and asked about Plaintiff's maternity plans.

On November 1, 2018, Plaintiff had a "pre-review" meeting with Hohulin and Cowan to discuss Plaintiff's job performance and any issues Plaintiff wanted to cover in her upcoming employee review. At the meeting, Hohulin and Cowan told Plaintiff they were pleased with Plaintiff's performance and were grateful Plaintiff had filled the administrative role during tax season and that Plaintiff's formal employee review was scheduled for December 2018. At the November 1, 2018 meeting, Plaintiff informed Hohulin and Cowan that she would complete her college classes on December 14, final grades would be released days later, and she would have her accountancy degree shortly thereafter.

Hohulin and Cowan then inquired about Plaintiff's pregnancy due date and plans for maternity leave. Plaintiff responded that she was due on January 24, 2019 and planned to take 10 to 12 weeks off and return to full-time work after her maternity leave. Next, Hohulin and Cowan began discussing Plaintiff's "career trajectory" and informed Plaintiff that, due to pregnancy and the ensuing maternity leave, Defendant would not be promoting Plaintiff to a full-time accountant until Plaintiff returned to work from maternity leave. Hohulin and Cowan then stated that Plaintiff would continue to work in an administrative capacity and when Plaintiff returned from maternity leave, Plaintiff's promotion would be discussed after the end of tax season. Hohulin and Cowan told Plaintiff that they "wanted to be sure [Plaintiff] would come back from maternity leave." Hohulin told Plaintiff that his wife "did not intend to be a stay-at-home mom

2

either" until the birth of their first child. Hohulin and Cowan reiterated that Plaintiff would only be promoted after Plaintiff proved she was returning to work after her maternity leave.

Plaintiff had her official employee review on December 6, 2018, and it was conducted by Hohulin and Cowan. At the meeting, Hohulin and Cowan again confirmed Plaintiff would not be promoted to an accountant position upon graduation, but only after Plaintiff returned from maternity leave. Plaintiff specifically asked Hohulin and Cowan, "If it weren't for my pregnancy and impending maternity leave, would I be receiving the promotion upon graduation?" Hohulin and Cowan replied in the affirmative. In response, Plaintiff informed Hohulin and Cowan withholding a promotion or raise due to pregnancy was prohibited by law and gave them a handout from the EEOC regarding unlawful pregnancy discrimination. In response, Hohulin and Cowan replied, "We obviously aren't HR professionals and we aren't trying to discriminate against you." Cowan stated they were just trying to do "what was fair for the firm and you" and that it would not be fair to the firm to promote Plaintiff to a full-time accountant given that her maternity leave would keep her away from the firm during tax season. After the meeting, Hohulin stated to Plaintiff he would need to consult with the other three partners before discussing a full-time offer with Plaintiff.

On or about January 4, 2019, Plaintiff was called into a meeting with Cowan, Hohulin, and two other Gorenz partners, Russ Rumbold and Stephanie Ramsay. At the meeting, Plaintiff was offered $38,000 per year for an entry-level accounting position. Plaintiff alleges Gorenz offered other similarly situated entry-level accountants between $42,000 and $46,000 as an initial offer.

Based on the above, Plaintiff initiated this lawsuit, alleging (Count 1) sex-based discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§2000e-2(a) due to pregnancy; (Count 2) sex-based discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) due to failure to provide equal pay; (Count 3) sex-based discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) by Defendant retaliating against Plaintiff due to Plaintiff asserting her right to be free from sex discrimination; and (Count 4) sex-based pay discrimination in violation of the Illinois Equal Pay Act, 820 ILCS 112/1 *et seq*.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible*, 799 F.3d at 639. To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## DISCUSSION

In Count 1 of her Amended Complaint, Plaintiff alleges she was discriminated against in violation of the PDA because "Defendant's refusal to hire Plaintiff into a full-time accounting position until after she returned from her maternity leave to ensure Plaintiff would return to work after her maternity leave constituted prohibited discrimination under Title VII." Doc. 13 at 6. Further, Plaintiff alleges Defendant discriminated against her in violation of the PDA because

"Defendant's offer of a full-time accounting position at $38,000.00 per year to plaintiff was below the offers made to similarly situated male and non-pregnant employees[.]" *Id*. "In a failure-to-promote claim, the plaintiff establishes a prima facie case by showing that (1) she is a member of a protected class, (2) she was qualified for an open position for which she applied, (3) she was rejected, and (4) someone possessing similar qualifications filled the position instead." *Ingram v. Brink's, Inc.*, 414 F.3d 222, 230 (1st Cir. 2005).

In its Motion to Dismiss, Defendant first argues Plaintiff's first cause of action of pregnancy discrimination must be dismissed because employers do not violate the Pregnancy Discrimination Act (PDA) by conditioning the availability of an employment benefit on an employee's decision to return to work after the end of the medical disability that pregnancy causes. Doc. 14 at 5; Doc. 17 at 1-2. (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734 (7th Cir. 1994)). In *Troupe*, the Seventh Circuit held the PDA "does not . . . require employers to offer maternity leave or take other steps to make it easier for pregnant women to work[.]" *Id*. at 738. Rather, "[e]mployers can treat pregnant women as badly as they treat similarly affected but nonpregnant employees, even to the point of 'conditioning the availability of an employment benefit on an employee's decision to return to work after the end of the medical disability that pregnancy causes.'" *Id*. (quoting *Maganuco v. Leyden Community High School Dist. 212*, 939 F.2d 440, 445 (7th Cir. 1991)). *See also Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996).

Based on the above case law, Plaintiff's argument--that Defendant's refusal to hire Plaintiff into a full-time accounting position until after she returned from her maternity leave to ensure Plaintiff would return to work after her maternity leave constituted prohibited discrimination--is mistaken. First, Plaintiff's assertion that her promotion was delayed until she

returned from maternity leave directly conflicts with her allegation that she was offered the accounting position on January 4, 2019. Doc. 13 at 5-6. Second, even if her promotion was delayed until her return from maternity leave, Plaintiff does not allege Defendant overlooked comparable absences from nonpregnant employees. *Troupe*, 20 F.3d at 738. Plaintiff places great emphasis on Defendant's alleged statement that Hohulin made regarding his wife's lack of intent to become a stay a home mother, Doc. 15 at 6, but in *Troupe* the defendant made a similar comment: Troupe was going to be terminated because the employer did not think she would return to work after giving birth to her child. *Id*. at 735-36. And while *Troupe* was decided at summary judgment, its holding that an employer who makes employment decisions based on an employee's pregnancy related absence does not violate the PDA resolved a question of law. Again, Plaintiff does not allege she was treated less favorably with respect to her promotion than any other employee who was about to miss 10 to 12 weeks of work. Because Plaintiff's claim is squarely foreclosed by *Troupe*, this claim must be dismissed.

Second, Plaintiff alleges Defendant discriminated against her in violation of the PDA because "Defendant's offer of a full-time accounting position at $38,000.00 per year to plaintiff was below the offers made to similarly situated male and non-pregnant employees[.]" Doc. 13 at 6. In Defendant's Motion to Dismiss, it contends this portion of the claim must likewise be dismissed because Plaintiff does not allege she accepted the promotional offer, and without that allegation she cannot establish the adverse employment necessary to state a Title VII discrimination claim. Doc. 14 at 8; Doc. 17 at 5. On this issue, neither party references binding precedent within this Circuit. However, the parties do cite and discuss the First Circuit's decision in *Ingram v. Brink's, Inc.*, 414 F.3d 222, 231 (1st Cir. 2005).

In *Ingram*, the First Circuit affirmed the grant of summary judgment in favor of the employer where the plaintiff's promotion was delayed multiple times. When the position was finally offered to her, she turned it down. *Id*. at 230. On appeal, the First Circuit reasoned that:

> Central to the first stage of the *McDonnell* framework, is evidence of an adverse employment decision. To be sure, the favorable decision did not come as quickly as Ingram would have liked, and she had her hopes dashed on more than one occasion. But in the final analysis, she got the job and she chose not to take it.

*Ingram.*, 414 F.3d at 231. In her Response to Defendant's Motion to Dismiss, Plaintiff attempts to distinguish *Ingram* by noting it was decided at summary judgment. Doc. 15 at 7. However, as Defendant persuasively argues, whether an unaccepted job offer amounts to an adverse employment action appears to be an issue of law. Doc. 17 at 7. Further, Plaintiff does not explain how this issue would be addressed differently at summary judgment or how facts elicited during the course of discovery would impact the Court's analysis. Finally, the Court agrees with Defendant that Plaintiff may not intentionally omit her pleading facts within her knowledge (whether she accepted the job offer) in order to survive a motion to dismiss. Doc. 17 at 5. Rather, the Court agrees with Defendant that Plaintiff failed to allege an adverse employment action where she alleges only that she was offered the position but fails to allege whether she accepted it. One must allege they were rejected for the position in order to state a prima facie case. *Ingram*, 414 F.3d at 230. Finally, the other authorities cited by Defendant support its position. *See, e.g., Lula v. Network Appliance*, 255 F. App'x 610, 612 (3d Cir. 2007) ("Here, Lula was not subject to an adverse employment action. This Court declines to extend the definition of an adverse employment action to include job offers. There is no cognizable cause of action based on a job applicant's rejection of a job offer she finds undesirable."); *Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Co-op. Educ. Servs.*, No. 08-CV-367-JTC, 2011 WL 4899991, at *9 (W.D.N.Y. Oct. 13, 2011), *aff'd*, 503 F. App'x 12 (2d Cir. 2012).

Next, Defendant asserts Plaintiff fails to state a claim under Title VII for unequal pay on the basis of sex because she cannot allege an adverse employment action—i.e., that she *acutally* was paid less for performing the full-time accounting job compared to anyone else who performed the full-time accounting job. Doc. 14 at 10. To establish a prima facie case of wage discrimination under the EPA, a plaintiff must show: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003). Defendant, relying largely on the same authorities discussed above, argues that Plaintiff's rejection of the offer dooms her claims because without accepting the offer she cannot allege she ever performed the job in the first place. *Id*. at 11. In her Response, Plaintiff asserts "the fact that [she] was not actually paid less than a similarly situated male employee is irrelevant, it is the allegation that she was offered less than similarly situated male employees that is important." Doc. 15 at 10. Absent from Plaintiff's brief is any citation to authority supporting that assertion. Given that a prima facie unequal pay claim must allege higher wages *were paid* and the work *was performed*, Plaintiff may not maintain her cause of action for unequal pay without alleging she actually performed the job. Accordingly, her equal pay claim (Count 2) is dismissed. Further, because Plaintiff concedes her federal equal pay claim and her Illinois equal pay claim are subject to the same analysis, her Illinois equal pay claim (Count 4) is likewise dismissed. *See* Doc. 15 at 11-12.

Next, Defendant argues Plaintiff's Title VII retaliation claim (Count 3) must be dismissed because the decision to delay her promotion preceded her alleged protected activity, she admits facts negating her claim, and she fails to allege an actionable adverse employment action. Doc. 14 at 11. In her Amended Complaint, Plaintiff alleges that after she informed Gorentz of her

belief that she was being discriminated against, "the Defendant refused to promote Plaintiff until she returned from maternity leave and offered her less pay than similarly situated employees." Doc. 13 at 8. Defendant first argues in its Motion to Dismiss that protected activity must precede the alleged retaliatory conduct. Doc. 14 at 12 (citing *Hopkins v. Springfield Hous. Auth.*, 592 Fed. App'x. 528, 529 (7th Cir. 2015)). In her Response, Plaintiff asserts,

> The basis for Plaintiff's allegation of retaliation is not as Defendant contends, that Defendant delayed the promotion of Plaintiff due to Plaintiff's pregnancy and maternity leave. The basis for Plaintiff's allegation of retaliation is that subsequent to Plaintiff informing defendant that Defendant's actions constituted pregnancy discrimination, Defendant offered Plaintiff an accountant position at a lower salary than similarly situated male and non-pregnant females.

Doc. 15 at 11-12. Thus, Plaintiff now limits her retaliation claim to the lower offer, and not any alleged delay.

Defendant next argues Plaintiff's retaliation claim must be dismissed because she fails to allege an adverse employment action. Doc. 14 at 13-14. A material adverse action is an essential element of a Title VII retaliation claim, but a material adverse action in the context of a retaliation claim is more broadly defined than adverse employment actions in a Title VII discrimination claim. *Poullard v. McDonald,* 829 F.3d 844, 856 (7th Cir. 2016) ("In the retaliation context, the challenged adverse action need not be one that affects the terms and conditions of employment, but it 'must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity.' "). "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in'' a Title VII "investigation, proceeding, or hearing.' " *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006). In *Burlington*, the Supreme Court remarked that "purpose reinforces what language already

9

indicates, namely, that the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id*. at 64.

In support of its argument, Defendant cites no binding authority in this Circuit but does cite to an unpublished case from the Sixth Circuit. *Abnet v. Unifab Corp.*, No. 06-2010, 2009 WL 232998, at *6 (6th Cir. Feb. 3, 2009). In *Abnet*, the Sixth Circuit found an unaccepted job offer failed to constitute an adverse employment action necessary to maintain a retaliation claim. *Id*. at *5. However, that court's analysis was explicitly based on facts elicited through discovery. *Id*. at *5-6. Because *Burlington* teaches that adverse employment actions in the context of retaliation claims are more broadly construed than adverse employment actions in Title VII discrimination claims, and because Defendant does not cite to case law in this Circuit demonstrating that an unaccepted job offer does not constitute an adverse employment action for the purposes of a retaliation claim, the Court denies this portion of Defendant's Motion to Dismiss.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 14) to Dismiss is granted as to Counts 1, 2, and 4 of Plaintiff's Amended Complaint and denied as to Count 3.


Signed on this 14th day of January, 2022.

James E. Shadid
James E. Shadid
United States District Judge